## JAMES BATES *versus* AMOS NORCROSS.

Where a father, being seised of land, conveys it with warranty to the tenant, and dies leaving a daughter his sole heir, with assets by descent to a greater value than the land, and she intermarries with the demandant, the demandant is rebutted from claiming the land under a title paramount to that of her ancestor, for in case of a recovery the tenant would have his action against the demandant and his wife upon her ancestor's covenant, to recover the value of the land.
Such a defence may be pleaded, or may be given in evidence under the general issue.

WRIT of entry, for about six acres of land lying in the town of Monson, formerly a part of the town of Brimfield. The demandant declared on his own seisin and a disseisin by the tenant.

---

At the trial, before *Wilde* J., the demandant relied upon a deed to himself from Jonas Blodget, dated July 10, 1827, but not recorded until the time of the trial ; upon a deed from Samuel Shaw to Blodget, dated December 4, 1795, but not recorded until the time of the trial ; and upon the book of records of the proprietors of the ancient township of Brimfield. This book contains the record of a survey of the land made by the demandant, on July 11, 1827, on the right of Samuel Shaw, one of the original proprietors. Samuel Shaw first mentioned was one of five heirs of Samuel Shaw, proprietor.

The tenant relied upon a deed to himself from Timothy Packard, dated October 8, 1816, and recorded, embracing the demanded premises, with general covenants of seisin and warranty. Also a deed from Ebenezer Davison to Packard, dated March 17, 1816, duly recorded, embracing the premises, with general covenants of seisin and warranty. He proved that Davison died in 1824, and that the demandant intermarried with the only daughter and heir at law of Davison, and that she received assets by descent from her father, in real estate, to a greater value than the land demanded.

Evidence was introduced by the tenant, which is stated in the opinion of the Court, to prove that Davison was seised of the land at the time of his conveyance to Packard

Whereupon it was contended by the tenant ; —

1. That as the demandant, in right of his wife, is privy in estate with Davison, he is estopped from setting up a title against the tenant paramount to the estate of his ancestor, Davison, against the grant and warranty of Davison :-

2. That as the tenant, were the demandant to recover in this action, would have his remedy by an action of covenant on the warranty, against the demandant and his wife, such warranty, to avoid circuity of action, operates by way of re-outter, to defeat and bar the action.

By consent of parties the case was taken from the jury, and the questions of law reserved for the whole Court.

*Wells* and *Alvord*, for the demandant. If the warranty has any effect on the demandant, it must be by way of rebutter,

*Bates*
*v.*
*Norcross.*

*Sept.* 15th,
1834.

and not estoppel, because he does not claim through the warranting ancestor. It is also a collateral, and not a lineal warranty. Lit. § 704. The demandant is not rebutted ; —

1. Because, not being the heir of the warranting ancestor, he is not a person to be affected by the warranty. Where the wife is heir, the husband does not take any interest in her ancestor's estate by descent from him, but by purchase through her, marriage being the consideration. The reason of the rule (to avoid circuity of action) does not apply, because the suit here is by the husband alone, and for his sole benefit ; whereas the suit on the covenant of the ancestor, would be against the husband and wife, in respect to the descent upon her, and would be properly payable out of her property. Co. Lit. 446 ; 6 Wood's Convey. 144 ; 4 Dane's Abr. 495, § 3. The opinions and *dicta* which appear to be against us, (Co. Lit. 365 ; Bac. Abr. *Warranty, N*, last paragraph ; 4 Dane's Abr. 493, § 4 ; 13 Assiz. 10 *Edw.* 3 ; Bro. Abr. *Voucher*, 13 ; Viner, *Voucher, C* 4,) seem to be founded in mistake, and particularly in not distinguishing between the cases of a warranty descending upon the *husband*, and one descending upon the *wife ;* it being right, on general principles, in the first case, that the husband and wife suing for land in her right should be rebutted, because *one of the parties on the record* is heir, and so by descent directly affected by the warranty ; whereas in the latter case there is *no party on the record* who is so affected.

2. Because the ancestor was not seised at the time of the warranty.

3. Because the estate of the demandant and those under whom he claims, was not divested and turned to a mere right at the time of the death of the ancestor.

4. Because the warranty is ineffectual by the English *St.* 4 *Anne, c.* 16, § 21, and 4 & 5 *Anne, c.* 16, which, 't 's contended, form part of our common law. 4 Dane's Abr. 792 ; *Sisson* v. *Seabury*, 1 Sumner, 235 ; Cruise's Dig. *tit. Deed, c.* 24, § 45 ; 4 Kent's Comm. 457.

5. A rebutter, to avail, must be pleaded, and cannot be taken advantage of under an issue upon the seisin or other title. 1 Roscoe on Real Actions, 215 ; Lit. § 708 ; Co

Lit. 372 *a*, 374, 283 *a*, 365 *a* ; Rast. Ent. 361 *a* ; Booth on Real Actions, 163, and cases cited ; Fitzh. Abr. *Droit*, 29 ; Bro. Abr. *Formedon*, 73 ; Bro. Abr. *Droit*, 48 ; Stearns on Real Actions, 233, 234 ; Jackson on Real Actions, 288 ; Com. Dig. *Guaranty, K* 3 ; Termes de la Ley, *Guaranty* ; Bac. Abr. *Warranty, M.*

6. The whole doctrine of the English law, as to rebutter by collateral warranty, is inapplicable to our situation and institutions, and does not belong to the common law of this Commonwealth. Stearns on Real Actions, 135 ; *Austin* v. *Gage*, 9 Mass. R. 395. The reason for the rule in the rebutter, is to avoid circuity of action, and in England it is only applied to that class of cases, where the rules of descent are such, that the circuity is entirely prevented. Thus it is applied to cases where the heir takes by descent according to the rules of the common law, and is held inapplicable in cases of descent according to the rules in gavelkind and borough-English. 22 *Edw.* 4, 10 ; Viner, *Voucher* (*U. b.* 6) ; Bro. Abr. *Trespass, pl.* 363 ; Co. Lit. 376 ; Hawk. Co. Lit. 487, note. And the reason why it does not hold in gavelkind, would seem to be, that the warranty may descend on several heirs, and it would be wrong that one of these, who had his title otherwise than through the warranting ancestor, should be rebutted, in order to avoid a suit on the covenants, where he might be only *one* of several defendants. This same reason applies to our laws of descent, by which all the children take equally both the estate and the liabilities of their parents.

*C. A. Dewey* and *R. A. Chapman*, for the tenant, cited in support of the ground that the demandant was rebutted, 4 Dane's Abr. 492, 493, 495 ; Co. Lit. 390 *a*, 365 *b* ; Bac Abr. *Warranty, N* 32, *N* 33 ; Viner, *Voucher*, (*C.* 4) and (*C. c.*) ; 2 Thomas's Co. Lit. 369, 370 ; 2 Tucker's Bl. 303, note ; *St.* 1788, 66, § 5 ; Viner, *Rebutter*, (*E. c.*), (*F. c.*) ; *Terry* v. *Taylor*, 9 Cranch, 43 ; *Eveleth* v. *Crouch*, 15 Mass. R. 307. To the point that a rebutter may be taken advantage of under the general issue, *Jackson* v. *Stevens*, 13 Johns. R 316 ; *Jackson* v. *Murray*, 12 Johns. R. 201 ; *Somes* v *Skinner*, 3 Pick. 54 ; *Carpenter* v. *Thompson*, 3 New

Bates
v.
Norcross.

Hampsh. R. 206 ; Trials per Pais, 250 ; Co. Lit. 227 *a* ; 11 Mod. 103 ; Jenk. Cent. 254 ; 4 Dane's Abr. 317, § 6 ; 10 Co. 96 ; Cro. Eliz. 140 ; Com. Dig. *Pleader, S* 5, *S* 6 ; *Adams* v. *Barnes,* 17 Mass. R. 368 ; Archb. Pl. (edit. 1824,) 227.

Sept. 22*d,*
1835.

Putnam J. delivered the opinion of the Court. The tenant contends that, by the law arising from the facts reported by the judge, the demandant is rebutted or precluded from recovering, inasmuch as if he should recover, the tenant would have an action against the demandant and his wife, to recover back the value of the land : for the father of the wife conveyed with warranty to the grantor of the tenant, and the warranty has descended to her, with assets to a greater value than the land in controversy.

This reasoning is denied by the demandant on various grounds, viz. that the demandant, the husband, has derived nothing by descent from his wife's father, but has acquired what descended to her by purchase, viz. for the consideration of his marriage to her ; that this suit is by the husband, but the suit upon the warranty must be against the husband and wife, and it would not be between the same persons as are parties to the present record ; that the ancestor was not seised at the time of the warranty ; that the estate of the demandant and those under whom he claims, was not divested and turned to a mere right at the time of the death of the ancestor ; that the warranty was ineffectual, by *St.* 4, *Anne, c.* 16, § 21 ; that the doctrine of rebutter by collateral warranty is not the law of this State ; and that a rebutter must be pleaded, and cannot be taken advantage of under the general issue.

We do not think it necessary to discuss all the points which have been raised by the elaborate arguments of the counsel. We begin with the last suggestion, and are satisfied that the demandant cannot, in this stage of the cause, object that the rebutter relied upon by the tenant cannot be given in evidence upon the general issue.

No such objection was made when the cause was tried. The object of the trial was, to collect the facts for the consideration of the whole Court. The demandant did not deny any fact relied upon by the tenant to maintain the rebutter.

But independently of these considerations, we are all satisfied upon authority, that this defence may be given in evidence on the general issue, or be pleaded.   The authorities cited in Com. Dig. *Pleader*, *S* 4, and *S* 5, are satisfactory upon this point.   The general rule is, that the jury may find whatever is material to the issue, which is not contrary to the record or the admission of the parties ; for example, matter of record given in evidence, as judgments ; so, matter of estoppel, though not pleaded.   They may find a collateral warranty, or a condition which defeats the estate.   Com. Dig. *Pleader*, *S* 6 ; *Smith* v. *Tindal*, 11 Mod. 103.   Regularly estoppels must be pleaded and relied upon by apt conclusion ; yet when the jury finds the fact, the Court ought to adjudge according to the law.   Co. Lit. 227 *a*.   If the adverse party should be surprised by such a defence, when offered in evidence, and give satisfactory proof of an intention to controvert it, the Court would grant a continuance or postponement, as the occasion should require.

We proceed to consider whether, upon the facts stated in the deposition of Jonas Blodget, the ancestor Davison was seised of the estate, claiming it in fee simple, when he conveyed with warranty.   If he was not, and the warranty commenced with a disseisin, it could not descend upon the heir, because there would not be any estate of inheritance to which the warranty could attach.   4 Dane's Abr. 493, § 7.   Such a covenant would bind the grantor, his executors and administrators, but would not descend upon his heirs.   *Spencer's case,* 5 Co. 16.   If the grantor were not so seised, the demandant might counterplead the voucher, by *St. Westm.* 1, *c.* 40, and aver that neither the vouchee nor any of his ancestors had any seisin whereof he might make a feoffment.   Co. Lit. 385 *a* ; 2 Bl. Com. 302.

Was this a warranty that commenced with disseisin ?   It is proved by Jonas Blodget, that he laid out the demanded premises for Davison.   Davison bought the same, in 1797, of Keep, who claimed it as his own more than thirty years ago, and who conveyed it by deed to Davison.   This very Blodget knew the boundaries, and had been round them several times.   He it was who gave the deed to the demand

Bates
v.
Norcross.

ant.  He says that Bates (the demandant) knew that Davison had a deed of the land, yet the demandant, supposing that the former deeds would not avail, proposed to locate it for himself under the original right of Samuel Shaw and a deed from Shaw to Jonas Blodget, dated 1795, on the ground that the lands remained in common.  He said he did not wish to have anybody know it ; and that Davison had a deed of the land, and he was afraid that some one would get it away.

Now it appeared that Blodget had deeds from several proprietors which authorized him to convey lands that lay in common.  He was the clerk of the proprietors.  Before the deed to the demandant, Norcross the tenant gave notice to the demandant that the land in question belonged to him, Norcross.  And no entry was ever made for the purpose of defeating the title of Davison or of the tenant.  And Blodget did not intend to convey any particular piece by his deed, but only so many acres of common land.

The knowledge which the demandant had of the deed to Davison and of his claim and of the claim of the tenant, and their possession, should be considered as equivalent to the notice given by the recording of the deed.  The land was (as the report states) uncultivated wood land, but the boundaries were known, and a considerable part was inclosed by a fence in a general inclosure of several individuals, and about one half of seventy acres conveyed by Packard (the grantee of Davison) to the tenant has continued to be inclosed and cultivated.  It appears that Keep claimed the land under a deed of warranty from Needham and others, dated July, 1778, recorded but not acknowledged, and they claimed under Robert Moulton, one of the original proprietors.  Davison was in the actual possession, cutting off the wood, twenty-one years ago.  It was surveyed for the parties when Davison gave his deed to Packard, in May 1816, and after the tenant bought the land of Packard, in October 1816, he went into possession, cut his timber for a barn in 1820, cut wood there before for several years, sold stone from the land in several instances, and not only so, but the tenant, when upon the land, informed Bates (the demandant) that the land belonged o him, Norcross.  From these facts there is no reason to

doubt but that the land, before the year 1778, was laid out to the grantors of Keep, upon the right of Robert Moulton. The seisin and possession and claim have continued ever since according to the deeds, and the extent of the claim, as defined in the deed to Davison, was known to the demandant. And it was not until July 10, 1827, that he undertook to disturb the title of the tenant, and cause the premises to be laid out as common land under the right of Shaw. Now we are all satisfied, that, from these facts, Davison was seised of an estate in fee, when he conveyed with warranty to Packard ; that the warranty did not commence by disseisin, but attached to the estate conveyed ; and that it descended upon the wife of the demandant, who is the sole heir of Davison.

But it is contended for the demandant, that inasmuch as he could not derive a title to the premises from the ancestor of his wife, he is a purchaser for valuable consideration, and so that it is a collateral warranty without assets, so far as he is concerned, and therefore he is not by law rebutted.

We do not consider the doctrine of collateral warranty as applicable to the case. If Davison were living and demanding the land, he would be estopped by his deed. So if his sole heir were suing for it, she would be estopped, being privy both in blood and estate. The warranty of her ancestor has descended upon her, and (as the case finds) with assets of greater value than the land. This is a case of lineal warranty with assets, so far as the daughter, sole heir, and wife of the demandant, is concerned. She at the time of her marriage was undoubtedly liable, and her liability devolved upon the husband and wife. If he were to be considered a purchaser for the valuable consideration of marriage, of all that came to the wife, it was *cum onere.* He and his wife became and were seised of the real estate in her right, and he took the personal estate absolutely, but subject to all the liability to respond to the warranty of her ancestor. If the demandant were to recover, the tenant would have an action against the demandant and his wife to recover back the value, and the judgment and execution would be against the husband and the wife, and might be levied upon the body or estate of the husband. So that if the husband should recover in this

action, he himself would be liable eventually to refund the value. In point of property he would be no gainer. The doctrine of rebutter, we think, applies to the case ; for it would be a vain and fruitless litigation on his part, if the consequences of his recovery should be followed out. By rebutting him, it is clear that circuity of action would be prevented, and the doctrine of rebutter, as well as the doctrine of lineal warranty, should be liberally applied for the preventing of suits and the quiet of the people.

The equitable considerations apply strongly to support this reasoning ; but the authorities confirm them. " If (says Lord *Coke*) a feme heir of a disseisor infeoffeth me with warranty and marrieth with the disseisee, if after the disseisee bring a præcipe against me, I shall rebut him, in respect to the warranty of his wife, and yet he demandeth the land in another's right." Co. Lit. 365 *b*.

This case cited from Co. Lit. applies directly. Davison being seised and possessed of an estate of inheritance in fee, conveyed with covenant of seisin and warranty, which have descended upon the wife of the demandant, with assets beyond the value. The husband (the demandant) claims the land in another's right, viz. under the deed of Jonas Blodget. He has married the only daughter and heir of Davison, the warrantor ; and the liability created by the warranty has descended upon the wife. It is of as much force and validity as if she had made the deed with warranty while she was sole ; and according to the law as stated by Lord *Coke*, the tenant may rebut the husband. The same law in Vin. Abr. *Voucher*, *C.* 4, *pl.* 1 ; Bac. Abr. *Warranty*, *N.*

It is contended for the demandant, that circuity of action would not be prevented where there were a number of heirs of the warrantor ; that the rule of rebutter would not apply to estates held in gavel-kind and borough-English, but only to cases of descent according to the English common law, to one heir. We are not called upon to decide what the law would be if there were more heirs of the warrantor than one. According to 4 Dane's Abr. 493, § 7, it would seem, that no one can claim an interest against his own warranty or against one descended upon *him and others*, where the principle

of rebutter, or circuity of action, applies. But the case at bar is clear of all difficulty on that point, for the report finds that the wife of the demandant is the sole heir of the warrantor.

The result is, the clear opinion of the whole Court, that the demandant is by law rebutted, and must, according to the reservation in the report of the judge, become nonsuit.